IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **TRUE MANAGEMENT ENTERPRISES, LLC,**<br><br>Plaintiff<br><br>v.<br><br>**OLEIN RECOVERY CORPORATION,**<br><br>Defendant | **CIVIL NO. 25-1428**<br><br>**FOR: BREACH OF CONTRACT; TORTIOUS INTERFERENCE; UNJUST ENRICHMENT**<br><br>**PLAINTIFF DEMANDS TRAIL BY JURY** |

## COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW Plaintiff, TRUE MANAGEMENT ENTERPRISES, LLC ("TME" or "Plaintiff"), by and through its undersigned counsel, and respectfully alleges and states as follows:

### I.   INTRODUCTION

1. This is an action for breach of contract, tortious interference, unjust enrichment, and related claims, arising out of Defendant Olein Recovery Corporation's unlawful breaches of its contractual obligations and wrongful conduct in usurping Plaintiff's exclusive business opportunities. After months of collaboration and good faith efforts by Plaintiff, Defendant secretly conspired to develop a competing product in violation of its exclusivity obligations, and then compounded its breaches by canceling Plaintiff's credit line and refusing to remit payments lawfully owed.

## II.   THE PARTIES

2. Plaintiff TRUE MANAGEMENT ENTERPRISES, LLC ("TME") is a limited liability company organized under the laws of the State of Florida, with its principal place of business at 2712 10th Street, Orlando, Florida 32820. Plaintiff's Vice President is Ms. Keren J. Cruz Ortiz.

3. Defendant OLEIN RECOVERY CORPORATION ("Olein") is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Carr. 901 km 2.7, Bo. Camino Nuevo, Yabucoa, Puerto Rico, 00767. Defendant's Resident Agent, President, Secretary, and Treasure is Jorge Gonzalez.

## III.   JURISDICTION AND VENUE

4. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between the parties: Plaintiff is a citizen of Florida, and Defendant is a citizen of Puerto Rico. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. Supplemental jurisdiction for the causes of action invoked under the laws of the Commonwealth of Puerto Rico are invoked under 28 U.S.C. §1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to these claims occurred in Puerto Rico.

## IV.   FACTUAL BACKGROUND

A. The Formation of the Exclusive Sub-Distribution Agreement

7. On March 13, 2023, Plaintiff TRUE MANAGEMENT ENTERPRISES, LLC ("TME") and Defendant OLEIN RECOVERY CORPORATION ("Olein") entered into a written

2

Exclusive Sub-Distribution Agreement ("the Agreement"), effective retroactively as of February 6, 2023, with a contractual term expiring February 6, 2025. The Agreement was automatically renewable.

8. The Agreement designated Olein as TME's exclusive sub-distributor for the "Mag-X" (hereafter the "Product") product line—a hemp wrap product intended for use with dried tobacco leaf or cannabis flower for smoking purposes. The Mag-X product contains neither nicotine nor tobacco.

9. Olein had no prior experience distributing products within the smoking product category, including rolling papers or smoking-related accessories.

10. TME was represented in the negotiation and execution of the Agreement by Ms. Keren J. Cruz Ortiz, while Olein was represented by Mr. Jorge Gonzalez, a/k/a "Tato."

**B. Olein's Contractual Obligations Under the Agreement**

11. The Agreement imposed specific contractual obligations on Olein, including:

   i. **Sales Efforts**: Olein was required to exercise commercially reasonable efforts to promote and sell the Mag-X products in the agreed territory.

   ii. **Infrastructure Maintenance**: Olein was obligated to maintain an adequate warehouse, a competent sales force, and a reliable transportation fleet to fulfill distribution needs.

   iii. **Demand Communication**: Olein had to regularly keep TME informed of anticipated product demand to allow for proper inventory management.

   iv. **Inventory Management**: Olein was responsible for maintaining sufficient inventory levels to meet anticipated sales demand.

   v. **Marketing and Advertising Costs**: Olein assumed sole responsibility for all costs related to trade marketing and advertising within the territory.

vi. **Advertising Restrictions**: Olein was prohibited from including any TME trademarks in advertising or promotional campaigns without prior written consent.

vii. **Payment Terms**: Olein was required to remit 50% of the purchase price upon submitting any order, and the remaining 50% upon proof of delivery duties paid and confirmation of delivery.

viii. **Trademark Compliance**: Olein agreed not to modify or improperly use TME's trademarks or intellectual property.

ix. **Indemnification**: Olein agreed to indemnify and defend TME against claims resulting from Olein's negligence or omission in performing its obligations.

x. **Termination Obligations**: Upon termination of the Agreement, Olein was obligated to discontinue any use of TME's trademarks, subject only to permit liquidation sales of existing inventory.

## C. The Exclusivity Clause

12. Previous to this agreement, Olein had not distributed products in the smoking category such as rolling papers and/or other smoking related accessories.

13. Clause 2(d) of the Agreement explicitly prohibited Olein from distributing any competing smoking products. While Olein was allowed to continue distributing other types of non-smoking products, it was contractually barred from distributing any products within the smoking category, including products similar to Mag-X. Specifically, restricting from introducing competing products in the market.

Clause 2(d) of the agreement states:

"True Management acknowledges and agrees that Olein and its affiliates currently distribute and will continue to distribute a broad variety of products. However, this clause ensures that Olein's rights to distribute other products are not limited, as long as such future products do not fall into the category of smoking products."

14. The purpose of this exclusivity provision was to prevent Olein from diverting sales or creating market confusion, thereby protecting TME's proprietary market share and business interests.

### D. TME's Extensive Investment in Olein

15. Over the course of approximately twenty-one (21) months, TME expended substantial resources training Olein's personnel on the Mag-X product line, product attributes, regulatory matters, sales strategies, and distribution operations for smoking-related products.

16. Ms. Cruz Ortiz personally provided extensive operational training, sales coaching, marketing guidance, and strategic direction to Olein's management and personnel to ensure the success of the distribution arrangement.

17. Despite these efforts, Ms. Cruz observed persistent performance deficiencies on Olein's part, including: subpar(below) sales performance; inadequate infrastructure development; and failure to adequately communicate demand forecasts. As a result, she became increasingly involved out of concerns about the performance of Olein's obligations.

### E. Credit Accommodations and Operational Adjustments

18. To compensate for Olein's repeated failures to fully execute its obligations, TME agreed to assume many of the sales and marketing functions initially assigned to Olein under the Agreement.

19. In exchange for these additional efforts, the parties arranged for TME to receive additional inventory under a revolving credit structure. This inventory was not provided on a consignment basis but required repayment by TME to Olein as the product was sold.

20. TME financed these operational adjustments through commissions earned on product sales, while simultaneously covering advertising, marketing, and operational expenses directly.

21. Over time, TME's outstanding line of credit with Olein fluctuated between $40,000 and $170,000 during the life of the Agreement.

**F. Discovery of Olein's Secret Competing Venture**

22. In November 2024, Ms. Cruz was informed by third parties that Olein was secretly planning to distribute a directly competing hemp wrap product manufactured by individuals closely connected to Olein's internal leadership.

23. The competing product was described as hemp wrap made with no nicotine and/or tobacco used for rolling dried tobacco leaf and/or cannabis flower for the purpose of smoking. At no point Olein had made no disclosure to TME about its plans to distribute a competing product.

24. This competing product was being manufactured and distributed by Joshua Rosa (the son of Julio Rosa, Olein's Vice President of Operations), Omar Rivera, and Austin Agustin Santos.

25. At no time did Olein disclose these plans to TME, despite the clear contractual requirement under Clause 2(d) prohibiting distribution of competing smoking products.

### G. TME's Attempted Good Faith Resolution Efforts

26. Upon learning of Olein's breach, Ms. Cruz Ortiz promptly consulted with her business partners Carlos Gonzalez and Milton Burgos, who serve as officers of TME.

27. TME's leadership collectively determined to seek an amicable resolution and scheduled multiple meetings with Olein's leadership to address these violations.

28. First Meeting (Yabucoa, Puerto Rico): The meeting was attended by Ms. Cruz Ortiz, Mr. Milton Burgos, Mr. Julio Rosa, and Ms. Virginia Gonzalez (Olein's Marketing Director and daughter of Jorge Gonzalez). TME presented a proposal aimed at resolving the contractual violations.

29. Olein took approximately four weeks to respond, ultimately rejecting TME's proposal and submitting a counterproposal that was commercially unacceptable to TME.

30. Second Meeting (Yabucoa, Puerto Rico): Present were Mr. Jorge Gonzalez (Olein's President), Ms. Cruz Ortiz, Mr. Burgos, Mr. Julio Rosa, and Ms. Virginia Gonzalez. During this meeting, Olein proposed a potential acquisition of TME and requested financial information to evaluate the possibility.

31. On March 5, 2025, Mr. Burgos delivered TME's financial valuation calculations to Mr. Jorge Gonzalez, Ms. Virginia Gonzalez, and Mr. Julio Rosa by email.

32. Despite several subsequent follow-up communications from TME, Olein failed to respond to TME's valuation submission.

### H. Olein's Retaliatory Conduct

33. After failing to respond to the valuation discussions, Olein unilaterally and abruptly: terminated TME's credit line effective immediately; and refused to remit payment for the outstanding balance of TME's last purchase order.

34. As a result, TME sustained significant financial losses, reputational harm, lost business opportunities, and was left with substantial unpaid balances owed by Olein under the Agreement.

## V.    CLAIMS FOR RELIEF

**COUNT I — BREACH OF CONTRACT**

35. Plaintiff incorporates all of the allegations that precede this paragraph, as if fully recited herein.

36. Under Puerto Rico law, contracts are a source of obligations. Art. 1063 of the Civil Code, 31 L.P.R.A. § 8984.

37. A contract exists when two or more persons agree to create, regulate, modify or extinguish an obligation. Art. 1230 of the Civil Code, 31 L.P.R.A. § 9751. Furthermore, all obligations that arise from the contracts have force of law between the contracting parties. Art. 1233 of the Civil Code, 31 L.P.R.A. § 9754.

38. Once a contract has been established, its provisions have the force of law between the parties and must be fulfilled. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 34 (2010). Pursuant to Art. 1062 of the Puerto Rico Civil Code, the fulfillment of what has been expressly agreed upon must be in accordance with good faith. 31 L.P.R.A. § 8983.

39. The previously mentioned acts by the Defendant constitute breach of contract under Articles 1158 and 1233 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 9303 and 9754.

40. Defendant materially breached the Agreement by: engaging in direct competition in violation of Clause 2(d); failing to maintain infrastructure and adequately promote the product; wrongfully terminating Plaintiff's credit line; refusing to remit payment for outstanding balances.

41. Defendant's repeated breaches have caused substantial harm to Plaintiff's business and commercial interests.

## COUNT II — TORTIOUS INTERFERENCE

42. Plaintiff incorporates all of the allegations that precede this paragraph, as if fully recited herein.

43. Defendant intentionally and maliciously interfered with Plaintiff's contractual relationships and business expectations by:

    i.  Secretly developing and launching a competing product;

    ii. Exploiting confidential information obtained through Plaintiff's training and good faith cooperation.

44. Under Puerto Rico law, tortious interference constitutes actionable extra-contractual faults. See Puerto Rico Civil Code, Art. 1536, 31 L.P.R.A. § 5141 (formerly Art. 1802 of the 1930 Code); see also *General Office Products Corp. v. A.M. Capen's Sons, Inc.,* 115 D.P.R. 553 (1984); *New Comm Wireless Services, Inc. v. SprintCom, Inc.,* 287 F.3d 1 (1st Cir. 2002).

45. Defendant's conduct was intentional, unjustifiable, and has caused significant damage to Plaintiff.

## COUNT III — CONTRACTUAL DAMAGES

46. Plaintiff incorporates all of the allegations that precede this paragraph, as if fully recited herein.

47. *Ex contractus* actions, which establish the right to damages arising from breach of contract are stated in Art. 1158 of the Civil Code, 31 L.P.R.A. § 9303. The Puerto Rico Civil Code states that when a party contravenes the tenor of his obligation, that party shall be liable for the damages caused. Id.

48. Pursuant to Art. 1167 of the Puerto Rico Civil Code, damages for failure to meet a contractual obligation include consequential damages and loss of income. 31 L.P.R.A. § 9331. Furthermore, if the breach was motivated by malice, the party responds for all the damages caused by the breach. Art. 1168 of the Civil Code, 31 L.P.R.A. § 9332.

49. Defendants' malicious acts in breach of contract have caused Plaintiff to suffer extensive damages, including consequential damages and loss of income.

50. Plaintiff did not receive significant projected income from the sale of the eighteen (18) pending shows that never took place due to Defendants' willful acts in breach of the Modified Agreement.

51. The damage sustained by Plaintiff are ongoing and continuous.

52. As a result of the damages detailed in the preceding paragraphs, Defendants stand to be liable for an amount plus interest which cannot be ascertained as of this date but shall be specifically alleged as litigation progresses.

## COUNT IV — IN THE ALTERNATIVE, EXTRACONTRACTUAL DAMAGES UNDER THE PUERTO RICO CIVIL CODE

53. Plaintiff incorporates all of the allegations that precede this paragraph, as if fully recited herein.

54. Should this Honorable Court make a finding that any one specific, some, or all claims set in the preceding paragraphs are not encompassed by valid claims for contractual damages or any other claim for compensation detailed herein, the Plaintiff does make claim that Defendants are liable to him for extensive monetary and moral damages.

55. Pursuant to Art. 1536 of the Puerto Rico Civil Code, "a person who by fault or negligence causes damage to another, shall be obliged to repair the damage done". 31 L.P.R.A. § 10801.

56. The Supreme Court of Puerto Rico has stated that in order to have responsibility imposed three (3) factors have to occur: (1) a damage has to have occurred; (2) an act or omission has to have occurred which is wrongful or negligent; (iii) the causal relationship between the damage and the wrongful or negligent conduct must be established. *Toro Aponte v. E.L.A.*, 142 D.P.R. 464 (1997).

57. Defendants willfully breached the contract causing extensive monetary and moral damage to Plaintiff.

58. Defendants' willful and malicious acts are the proximate cause of Plaintiff's extensive monetary and moral damage.

59. Due to Defendants' negligence, Plaintiff has lost a substantial amount of income and has suffered vast mental losses. Also, his professional image has been greatly lacerated by the acts of Defendants.

60. As a result of the damages detailed in the preceding paragraphs, Defendants stand to be liable for an amount plus interest which cannot be ascertained as of this date but shall be specifically alleged as litigation progresses.

**COUNT V — IN THE ALTERNATIVE UNJUST ENRICHMENT**

61. Plaintiff incorporates all of the allegations that precede this paragraph, as if fully recited herein.

62. Should this Honorable Court make a finding that any one specific, some or all claims set in the preceding paragraphs are not encompassed by valid contractual terms, the Plaintiff affirmatively alleges that Defendant has unlawfully enriched itself at Plaintiff's expense by: retaining the benefits of Plaintiff's investment in training, marketing, and customer development; retaining inventory proceeds that rightfully belong to Plaintiff.

63. Puerto Rico law prohibits unjust enrichment and requires restitution where one party benefits unfairly at another's expense without legal cause.

64. To prove a claim for unjust enrichment under Puerto Rico law, the following requirements must be present: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause. *Brown v. J&W Grading, Inc.,* 390 F. Supp. 3d 337 (D.P.R. 2019).

65. Defendant's enrichment was directly at the expense of the Plaintiff, and restitution is required.

66. Plaintiff suffered a correlative loss due to Defendants' breach of contract.

67. As a result of the unjust enrichment detailed in the preceding paragraphs, Defendants stand to be liable for an amount plus interest which cannot be ascertained as of this date but shall be specifically alleged as litigation progresses.

## VI. DAMAGES

68. As a direct and proximate result of Defendant's conduct, plaintiff has suffered: lost profits and business opportunities; reputational harm and loss of goodwill; financial losses from unpaid balances; and substantial wasted investments.

69. Plaintiff estimates its damages exceed $500,000.00 subject to proof at trial.

70. Plaintiff seeks compensatory damages, consequential damages, restitution, attorneys' fees, prejudgment and post-judgment interest, and all other relief the Court deems just and proper.

## VII.   TRIAL BY JURY

71. Plaintiff demands trial by jury.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, and for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court:

a) Enter judgment in favor of Plaintiff and against Defendant on all counts;

b) Award Plaintiff all compensatory, consequential, and restitutionary damages allowed by law;

c) Awarding Plaintiff with a sum to be determined at trial for moral, consequential and monetary damages stemming from Defendants' breach of contract.

d) In the alternative to any of his contractual claims, that Plaintiff be awarded a sum to be determined at trial for loss of income stemming from Defendants' unjust enrichment.

e) In the alternative to any of his contractual claims, that Plaintiff be awarded a sum to be determined at trial for moral and monetary damages stemming from Defendants' willful and malicious acts.

f) Awarding Plaintiff costs, reasonable attorneys and investigatory fees and expenses, together with prejudgment interest, under the provisions of Rule 44 of Puerto Rico's Rules of Civil Procedure, 32 L.P.R.A. Ap. V R. 44 and § 1117 of the Lanham Act.

g) Award punitive damages to the extent permitted by law;

h) Grant such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/RCF system.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 11th day of July 2025.

/s/ **Edwin Prado Galarza, Esq.**
USDC-PR No. 208804
Prado Núñez & Asociados P.S.C.
403 Del Parque Suite 8
San Juan, PR 00912
(787)977-1411
pradolaw10@gmail.com